UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

ZULMA RIOS-RIOS,

    Plaintiff,

    v.

MICHAEL J. ASTRUE,

    Defendant.

Civil No. 10-1874 (JAF)

**OPINION AND ORDER**

Claimant petitions this court under 42 U.S.C. § 405(g) to review the decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying Claimant's application for disability benefits. (Docket No. 1.) Claimant files a memorandum challenging the denial (Docket No. 13), and Commissioner files a memorandum defending it (Docket No. 14).

**I.**

**Background**

We derive the following facts from the transcript of the record in this case ("R."). Claimant was born on September 6, 1956. (R. at 75.) Claimant graduated high school and had training as a medical secretary. (R. at 92, 106.) She has worked for a mail carrier delivering letters, as a fish cleaner at a fish factory, and as a security guard at a school. (R. at 99.) She left

Civil No. 10-1874 (JAF)                                                                                                            -2-

her last job as a security guard on April 11, 2003, when she alleges her disability began. (R. at 98–99.)

On August 28, 2003, Claimant applied for Social Security disability benefits. (R. at 75.) She claimed that she was disabled under the Social Security Act, 42 U.S.C. §§ 416 and 423 ("Act") on account of depression, arthritis, scoliosis, migraines, a back condition, intestinal problems, hernia, and problems with her knee and right leg. (R. at 87.) On February 24, 2004, Commissioner determined that Claimant was not disabled and, accordingly, was not entitled to disability benefits under the Act. (R. at 52.) Claimant requested reconsideration of the determination and, on March 1, 2005, Commissioner affirmed the denial. (R. at 63.)

Claimant requested a hearing before an administrative law judge ("ALJ"), but later waived her right to an in-person hearing (R. at 42). On the basis of the record presented, the ALJ rendered a decision on October 24, 2007, determining that Claimant is not disabled and denying her benefits under the Act. (R. at 13–31.) Claimant requested review of the ALJ decision from the Appeals Council and, on August 4, 2010, the Appeals Council denied that review. (R. at 6–9.) Finally, on September 10, 2010, Claimant filed the instant case for judicial review of Commissioner's decision. (Docket No. 1.)

## II.

## Standard of Review

An individual is disabled under the Act if she is unable to do her prior work or, "considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d). The Act provides that

"[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). We must uphold Commissioner's decision if we determine that substantial evidence supports the ALJ's findings, even if we would have reached a different conclusion had we reviewed the evidence de novo. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

Our review is limited to determining whether the ALJ employed the proper legal standards and focused facts upon the proper quantum of evidence. Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1981). We reverse the ALJ if we find that he derived his decision "by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). In reviewing a denial of benefits, the ALJ must have considered all evidence in the record. 20 C.F.R. § 404.1520(a)(3). The Act outlines a five-step inquiry to determine whether a claimant is disabled. Step one focuses on the claimant's work activity; if claimant is "doing substantial gainful activity," he will be found "not disabled." § 404.1520(a)(4). Step two determines whether a claimant's impairment(s) meet the Act's severity and duration requirements. Id. A claimant bears the burden of proof "at step one of showing that he is not working, [and] at step two that he has a medically severe impairment or combination of impairments . . . ." Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). In this case, the ALJ found that Claimant's mild migraine headaches, mild

Civil No. 10-1874 (JAF) -4-

arterial hypertension, osteoarthritis, obesity, mild lumbar degenerative disc disease, bilateral knee pain, status post bilateral knee arthroscopies, and moderate major depressive disorder were severe impairments. (R. at 21–25.) The ALJ then proceeded to step three. (Id.)

Step three asks whether the claimant has an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, subpart P. § 404.1520(d). If the claimant does not have an impairment equaling one of those listed impairments, see id., the inquiry proceeds to step four. At step four, the ALJ first must determine the claimant's residual functional capacity (RFC). § 404.1520(e). Next, the ALJ asks whether the claimant has the residual functional capacity to perform the requirements of her past relevant work. § 404.1520(f). If the claimant is able to perform her past work, she is not considered disabled. Id. The burden is on the claimant, under steps one through four, to prove that she cannot return to her former employment because of the alleged disability. Santiago v. Sec'y of Health and Human Servs., 944 F.2d 1, 5 (1st Cir. 1991). If the claimant cannot return to her past work, the inquiry proceeds to step five, to determine whether there are other jobs in the national economy that claimant can perform. § 404.1520.

In this case, the ALJ found at step three that Claimant did not have an impairment equaling one of the impairments listed in 20 C.F.R. Part 404, subpart P.[1] (R. at 25.) The ALJ then found that Claimant had a residual functional capacity allowing her to perform light work that was not complex and that did not require frequent bending, climbing, or stooping. (R. at

---

[1] Claimant does not challenge this finding, (Docket No. 13), and we see no error.

26–27.) Proceeding to step four, the ALJ then found that Claimant could not return to her past work because such work exceeded her residual functional capacity. (R. at 27.) At step five, the ALJ used the Medical-Vocational Rules ("the Grid") as a framework to conclude that other work existed in significant numbers in the national economy that Plaintiff could perform. (R. at 27–28.) The Grid is a table used at step five of the sequential evaluation process that apply a claimant's vocational factors and her RFC to determine whether she should be found disabled. Part 404 subpart P, App'x 2. Finding that there were other jobs in the national economy that Claimant could perform, the ALJ found Claimant was not disabled prior to the expiration of her insured status, on September 30, 2008.[2] (R. at 292.)

### III.

### Analysis

Claimant alleges that the ALJ improperly determined that Claimant was not disabled. (Docket No. 13.) Specifically, Claimant argues that the ALJ should not have relied only on the Grid to determine that there were jobs in the national economy that Claimant could perform. (Id. at 17–19.) Claimant argues the ALJ should have consulted vocational experts to make this determination. (Id.) Claimant also argues that the ALJ was wrong to discount the opinions of her treating physicians, and that the RFC assigned by the ALJ does not rest on substantial evidence. (Id. at 21–26.) Commissioner responds only to Claimant's arguments regarding the use of the Grid. (Docket No. 14.) We address this dispute first, and we remand on this basis.

---

[2] Based on the earnings posted in Claimant's record, she had to show that she was disabled on or before September 30, 2008, when Claimant last met the Act's insured status requirement, as determined by 20 C.F.R. § 404.130–31. (R at 21, 85.)

### A.   ALJ's Use of Grids

At step five, after a claimant has been deemed unable to return to her past work, Commissioner has the burden of demonstrating the existence of other jobs in the national economy that claimant can perform. Gagnon v. Sec'y of Health & Human Servs., 666 F.2d 662, 666 n.9 (1st Cir. 1981). To determine whether a claimant can perform other work, the ALJ must first make findings of fact with respect to claimant's RFC, age, education and work experience. § 404.1520(a)(4)(v). Where these findings of fact "coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." § 404.1569. These rules are gathered in Appendix 2 to Subpart P of Part 404–the Grid. Id.

> Although the occupational "Grid" may be used by the Administrative Law Judge to make determinations regarding the disability status of many individuals under 20 C.F.R. § 404.1520(a)(4), "[w]here a claimant has non-exertional impairments in addition to exertional limits, the Grid may not accurately reflect the availability of jobs a claimant can perform."

Miranda-Monserrate v. Barnhart, 520 F. Supp. 2d 318, 324 (D.P.R. 2007) (quoting Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1991)).

In the present case, it is uncontested that Claimant suffered from both exertional and non-exertional limitations. (Docket Nos. 13 at 9; 14 at 10.) Specifically, the ALJ found that Claimant suffered from "a depressive disorder . . . moderate in intensity." (R. at 25.) The RFC assessment performed by the state agency physician also noted that Claimant showed "psychomotor retardation" and "diminished attention and concentration." (R. at 589.) The ALJ also concluded in his RFC assessment that Claimant was unable to perform light work that

Civil No. 10-1874 (JAF)                                                                                               -7-

required "frequent bending, climbing and stooping, or performance of complex tasks." (R. at 26.)

Commissioner argues that "the mere existence of non-exertional limitations does not mandate the use of a vocational expert nor preclude reliance on" the Grid. (Docket No. 14 at 12–13.) In support of this argument, Commissioner cites only one case, Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 194 (1st Cir. 1987). As a general rule, it is true that not every non-exertional limitation will require a vocational expert's testimony. Id. Specifically, where a claimant's non-exertional limitation is not "significant enough to limit access to the full range of jobs" he is exertionally capable of performing, reliance on the Grid is appropriate. Id. at 195. That is exactly what happened in Frustaglia. Because claimant's ability to bend repeatedly had "very little effect on the ability to perform the full range of work at either the light or sedentary level," the ALJ in that case properly relied on the Grid to find that the claimant was not disabled. Id. Specific regulations held that a claimant's inability to bend frequently left the light work and sedentary occupational base "virtually intact." Id. (citing SSR 83–14; SSR 85–15).

Here, the circumstances are quite different. In the present case, the ALJ specifically found that "claimant's ability to perform all or substantially all of the requirements of this level of [light] work has been impeded by additional limitations." (R. at 28.) Therefore, unlike in Frustaglia, Claimant was not found able to perform "the full range of jobs at the light or sedentary levels." 829 F.2d at 195. "In cases where a non-exertional limitation significantly affects claimant's ability to perform the full range of jobs he is otherwise exertionally capable

Civil No. 10-1874 (JAF)                                                                                           -8-

of performing," the Commissioner "must carry his burden of proving the availability of jobs in the national economy by other means, typically through the use of a vocational expert." Miranda-Monserrate, 520 F. Supp. 2d at 324 (internal quotation marks omitted) (citing Gagnon, 662 F.2d at 665 n.6). Therefore, Commissioner's argument that the ALJ was allowed to rely on the Grid alone is mistaken.

The question then becomes whether the ALJ properly carried his burden of demonstrating the existence of other jobs that Claimant could perform. Gagnon, 666 F.2d at 666 n.9. The ALJ wrote that he consulted with "vocational specialists," who determined that, based on Claimant's RFC and vocational factors, Claimant was capable of performing the requirements of unskilled representative occupations, such as cuff holder, assembler, and sticker. (R. at 28.) Claimant argues this was insufficient to carry the Commissioner's burden. (Docket No. 13 at 9–17.) Claimant argues that a proper consultation with a vocational specialist would have accounted for all of Claimant's limitations. (Id.)

It is telling that Commissioner does not attempt to defend the ALJ's actions as a proper consultation with vocational specialists. (Docket No. 14 at 12). Rather, Commissioner argues that no consultation was required and the ALJ was merely relying on the Grid. (Id.) We have already rejected Commissioner's argument that reliance on the Grid alone was proper, and we agree with Claimant that "live testimony from a vocational expert" was required to carry Commissioner's burden. Arocho v. Sec'y of Health and Human Servs., 670 F.2d 374, 375 (1st Cir. 1981). On remand, the testimony from vocational specialists must comply with relevant

Civil No. 10-1874 (JAF) -9-

First Circuit case law. See id. (holding that for "testimony of a vocational expert" to be relevant, answers to hypothetical questions must take account of claimant's medical limitations).

**B.    Determination of Claimant's RFC**

Claimant argues that the ALJ improperly rejected the opinion of her treating and consulting physicians, Dr. Malavé, Dr. Pérez, and Dr. Rodríguez. (Docket No. 13 at 21–22.) These doctors provided more severe assessments of Claimant's mental and emotional condition than did the state agency physician, Dr. Vecchini. (Id. at 21–23.) § 404.1527(d)(2) requires that the ALJ give treating source opinions "on the nature and severity" of a claimant's impairment "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the case. § 404.1527(d)(2) provides that the ALJ will give "good reasons" for the weight it gives the opinion of a treating physician.

In this case, we find that the ALJ complied with both regulations. (R. at 16–17.) Dr. Malavé, the treating physician, diagnosed Claimant with a "severe schizoaffective disorder of the depressed type." (R. at 24.) The ALJ permissibly found that this opinion was "not supported by the psychiatrist's own findings, nor by those on the whole record." (R. at 25.) In particular, the ALJ noted that Dr. Malavé himself had diagnosed Claimant as "coherent, relevant, logical and well oriented in the three spheres; she had no suicidal or homicidal ideas. . . . judgment not significantly impaired." (R. at 24.) Over two single-spaced pages, the ALJ considered "the longitudinal analysis of the medical evidence on the whole record," including the reports of Dr. Pérez and Dr. Rodríguez. (R. at 23–25.) The ALJ adequately explained his

reasons for disregarding the opinion of Dr. Malavé. Significantly, Dr. Malavé's opinion was also contradicted by that of the state agency physician. (R. at 25.) This was enough for the ALJ to disregard Dr. Malavé's opinion.[3] In a case cited by Claimant, the First Circuit: "affirm[ed] the Secretary's adoption of the findings of a non-testifying, non-examining physician, and permitt[ed] those findings by themselves to constitute substantial evidence, in the face of a treating physician's conclusory statement of disability." Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991) (citing Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982)).

Claimant next argues that the ALJ did not have an adequate basis for determining Claimant's RFC. He argues that the state agency medical consultants did not examine plaintiff, failed to provide adequate explanations, and did not take account of all the evidence. (Docket No. 13 at 23–27.) Without a sound medical opinion to rely on, Claimant contends, the ALJ impermissibly translated raw medical data himself, in contravention of Rosado v. Sec'y of Health and Human Servs., 807 F.2d 292 (1st Cir. 1986). (Docket No. 13 at 26.)

Claimant's arguments are mistaken. First, Dr. Vecchini made a number of findings that the ALJ used to determine the Claimant's RFC. (R. at 18, 589.) Those findings included that: Claimant can remember and carry out simple instructions, can sustain attention and concentration for two hour intervals, can interact with supervisors, and can adjust to changes in the work

---

[3] Claimant's medical record, spanning some 700 pages, provides fodder for both sides of this dispute. Nevertheless, "[i]t is the responsibility of the Secretary to determine issues of credibility and to draw inferences from the record evidence . . . . Indeed, the resolution of conflicts in the evidence is for the Secretary, not the courts." Irlanda, 955 F.2d at 769 (citations omitted).

setting. (R. at 589.) Dr. Vecchini also found that the Claimant was "not significantly limited" in thirteen out of twenty functional areas, such as the ability to carry out very short and simple instructions and the ability to respond appropriately to changes in the work setting. (R. at 587–88.) No more was required for the ALJ to find Claimant's RFC. Agron-Bonilla v. Comm'r. of Soc. Sec., 148 Soc. Sec. Rep. Serv. (CCH) 106, 2009 WL 4670538, at *5 (D.P.R. 2009) (affirming ALJ denial of benefits that relied on opinions of non-treating state agency physicians).

## IV.

## Conclusion

For the reasons stated above, we **REMAND** the Commissioner's decision for further proceedings consistent with this opinion, including the receipt of additional evidence. We note that this remand is within sentence four of 42 U.S.C. § 405(g), pursuant to Shalala v. Schaeffer, 509 U.S. 292, 297 (1993).

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 22nd day of March, 2012.

s/José Antonio Fusté
JOSE ANTONIO FUSTE
U.S. District Judge